1        UNITED STATES BANKRUPTCY COURT
          SOUTHERN DISTRICT OF FLORIDA
2

3             Judge Erik P. Kimball

4   In Re:

5                   Case No. 20-17930-EPK

6   GEORGE D. DAVIS,
            Debtor.
7   _____

8   SAFS, INC.,
            Plaintiff,
9   vs.              Case No. 20-1384-EPK

10  GEORGE D. DAVIS,
            Defendant.
11  _____

12

13                  ECF #14

14            September 1, 2021

15

16  The above entitled cause came on for hearing before the

17  HONORABLE ERIK P. KIMBALL, one of the Judges in the

18  UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN

19  DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West

20  Palm Beach, Palm Beach County, Florida, on September 1,

21  2021, commencing on or about 11:00 a.m., and the

22  following proceedings were had:

23

24        Transcribed from a digital recording by:

25          Jacquelyn Ann Jones, Court Reporter

Page 2

1

2   TELEPHONIC APPEARANCES:

3

    RAPPAPORT OSBORNE RAPPAPORT, PLLC
4   By: LES OSBORNE, ESQUIRE
    On behalf of George Davis

5

    LAW OFFICE OF JOSHUA COHEN
6   By: JOSHUA COHEN, ESQUIRE
    On behalf of SAFS, Inc.

7

    DAY PITNEY, LLP
8   By: ANDREW INGALLS, ESQUIRE
    On behalf of SAFS, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Good morning, everyone.  We're here

2  in the adversary proceeding SAFS, Inc. against Davis.

3              Let's see, we have Mr. Cohen.  Good morning.

4              MR. COHEN:  Good morning, Your Honor.

5              THE COURT:  And also Mr. Ingalls, I see.  Good

6  morning.

7              MR. INGALLS:  Good morning, Judge.

8              THE COURT:  Mr. Osborne.

9              MR. OSBORNE:  Good morning, Your Honor.

10             THE COURT:  All right.  So I have some

11  extensive briefs on the motion for summary judgment,

12  which is in the docket at 14, and responses, et cetera.

13           It's really up to you whether you make a

14  presentation on it.  I'm glad to hear a presentation on

15  the motion.  I have studied the motion and the briefs,

16  response, et cetera.  Who would like to address it from

17  the point of view of the movant?  Mr. Osborne, I assume.

18             MR. OSBORNE:  Yes, Your Honor.  I know you read

19  everything, and as you said, you've already read

20  everything.  If Your Honor wishes me to address any

21  issues, I'm happy to do so.  If you'd like a

22  presentation, I'm happy to make one.  If you feel you

23  don't need it, that's fine also.  I think that the briefs

24  are pretty thorough.

25             THE COURT:  Okay.  It's not necessary.  Perhaps

1    we'll see what the plaintiff would like to say and you

2    can respond if you like.

3              Very good.  Mr. Cohen, I presume.

4              MR. COHEN:  Yes, Your Honor.  Thank you.

5              Your Honor, I think actually I would like to

6    start with just a brief discussion of the supplemental

7    authority that we filed last week as it relates to the

8    collateral estoppel argument.

9              THE COURT:  Sure.

10             MR. COHEN:  Because that was not really

11   briefed, and I think it's relevant, particularly with

12   respect to the arguments that the debtor has made with

13   respect to 523(a)(2) and 523(a)(6).

14             The supplemental authority to which I refer,

15   Your Honor, is In Re Harris, 3 F 4th, 1339, 11th Circuit

16   2021.

17             THE COURT:  Yes.  You should know I read it

18   when it as issued, and I read when you sent it to me.

19             MR. COHEN:  I appreciate that, Your Honor.  I

20   just want to highlight a couple of points that are made

21   in the case very briefly, and just discuss very quickly

22   how they tie into the issues in the case.

23             And specifically, Your Honor, in that case the

24   11th Circuit observed that for collateral estoppel to

25   apply Florida law requires that the parties and issues be

1   identical, and that the particular matter be fully

2   litigated and determined.  That's at 1345.

3           The Court goes on to note that if there is an

4   ambiguity in the prior proceedings, and I quote, "any

5   reason" -- any reasonable" -- sorry, my notes are

6   unclear.  Essentially, "any reasonable question as to

7   what was decided by a prior judgment should be resolved

8   against using it as an estoppel."  And that's at 1346.

9           And it goes on to say that collateral estoppel

10  does not apply when the prior judgment is based on a

11  general verdict which makes it impossible to tell which

12  theory or claim the jury accepted, at 1347.

13          And it's relevant, Your Honor, with respect --

14          THE COURT:  And that decision involved a

15  general default judgment on a Florida action.

16          MR. COHEN:  Yes, Your Honor.  But the relevance

17  comes in, Your Honor, because the jury interrogatories

18  from the Connecticut action, which was defined in the

19  papers, it's the case that was tried to a jury in

20  Connecticut back in 2018, the specific jury interrogatory

21  at issue here is a compound question that relates to

22  whether the -- whether there was reliance that resulted

23  in an injury.

24          And you know, the -- you know, a review of the

25  jury interrogatories and the answer does not make clear

1    whether the jury found that there was no reliance, that

2    there was no injury, or both.

3              So here we have a situation -- go ahead, Your

4    Honor.

5              THE COURT:  Well, hold on, hold on a moment.

6    How could the jury find injury if there was no reliance,

7    logically speaking?  You're injured by not relying?  I

8    think that's not a logical potential, even given the --

9    assuming that your argument is a valid argument.

10   Couldn't it only be --

11             MR. COHEN:  But the --

12             THE COURT:  Hold on.  Couldn't the only

13   outcome, assuming your argument, the only outcomes could

14   be that there was no reliance and therefore no answer on

15   the injury, or that there was no reliance -- excuse me --

16   there was reliance and no injury.  I think those are the

17   only two logical possibilities given your argument.

18             MR. COHEN:  I think that's -- that's certainly

19   fair, Your Honor, but I don't think it changes the

20   analysis with respect to the point that we're trying to

21   make.

22             THE COURT:  Well, wouldn't you lose --

23   wouldn't you lose here in both cases?

24             MR. COHEN:  I don't think so, Your Honor,

25   because with respect to 523(a)(2)(B) there's no injury

1    component to that standard.

2            THE COURT:  Okay, stop there for a moment.  So

3    you can bring an (a)(2)(B) action if you have no injury?

4            MR. COHEN:  The issue, Your Honor, as I read

5    the statute and as I read the cases, is whether there was

6    a -- you know, whether false statements were presented

7    for purposes of inducing certain action that induce

8    certain action.

9            THE COURT:  How -- then don't you need to have

10   a debt, Mr. Cohen?

11           MR. COHEN:  Well, there is a debt here that was

12   -- that was founded in part upon, you know, those

13   actions.

14           THE COURT:  Okay.  Remember, we're -- I'm not

15   asking here.  You're making an argument based on

16   (a)(2)(B).  Let's go back to (a)(2)(B).

17           Don't you have a -- have to have -- the Code

18   doesn't use the word resulting from, but that's what it

19   means.  And so don't you need to have a debt that is the

20   outcome of the misrepresentation and reliance, meaning,

21   you have to have an injury to have an (a)(2)(B) claim.

22           You can't say, I have no injury but I was lied

23   to and I'm upset, and I shall sue under (a)(2)(B).  You

24   need to have a debt that is connected to the bad act, and

25   the debt is the injury.  You obviously have to have an

1    injury under (a)(2)(B).

2              MR. COHEN:  I would argue, Your Honor, that it

3    is -- it is that the debt has to arise with respect to,

4    at least in part, the false presentations.  But I don't

5    know that the statute requires that there be an

6    actionable injury from a false standpoint.

7              THE COURT:  I don't --

8              MR. COHEN:  Maybe that's a distinction that --

9              THE COURT:  I don't know how you have a claim.

10   How do you have a claim?

11             (a)(2)(B), It is, let's see, it's any debt, in

12   this case, for credit obtained by use of a statement of

13   writing that is false, respecting, et cetera.

14             I mean, the debt has to be directly relating to,

15   and it's only to the extent that the debt relates to the

16   defendant's bad acts that you have a claim.  There's

17   obviously an injury.  I don't know how you say that

18   (a)(2)(B) doesn't require a proof of an injury.

19             You cannot have exception of a debt from the

20   discharge without there having been an injury of the

21   specified kind listed in (a)(2)(B), which is refinancing,

22   extension of credit, et cetera.

23             MR. COHEN:  And I would read, Your Honor,

24   obtained by, to be a situation in which the documents

25   presented to the lender were false, intended to induce

1   the lender to lend and the lender did lend.  Which is

2   exactly what happened here.

3               THE COURT:  Okay.

4               MR. COHEN:  There's no issue of fact there.

5   And there is a debt that arose from that --

6               THE COURT:  Right.  But now you're arguing this

7   case.  And I'm -- your argument in the briefs was that

8   under (a)(2)(B) they're not -- the plaintiff does not

9   need to prove an injury.  I don't even know -- it doesn't

10  make any logical sense.

11              MR. COHEN:  Well, then maybe the -- maybe the

12  distinction here, and maybe our papers weren't clear to

13  the point that we were arguing that the collateral

14  estoppel argument doesn't apply here, because essentially

15  you have different things.

16              You have a fraud claim that requires, you know,

17  a certain tie in between the fraud and the injury, and

18  here under (a)(2)(B) you have a statutory requirement

19  that certain false statements be made to induce the

20  lender to lend that give rise to a loan, which is exactly

21  what happened here.  Those are two distinct things in my

22  view.

23              THE COURT:  What you just described -- you just

24  described two things that have no distinction whatsoever.

25  In this particular case your argument is that there was

1    an advance based on a lie.  And that is exactly what was

2    required in Connecticut.

3              Is there any reason to believe that the

4    Connecticut collateral estoppel rule is different from

5    the Florida one?  I think the answer is no, but I'd just

6    like to know your --

7              MR. COHEN:  I think the answer is I -- yeah, I

8    would not say -- I would not say they -- to the extent

9    they are different, if at all, it wouldn't be material I

10   wouldn't think in this instance, Your Honor.

11             THE COURT:  Right.  Okay.

12             MR. COHEN:  And I wouldn't argue that.

13             THE COURT:  All right.

14             MR. COHEN:  So I understand Your Honor's

15   position with regard to 523(a)(2)(B).  I don't

16   necessarily concede the point, but I do understand the

17   point that Your Honor is making.  And I think in the

18   interest of time and efficiency, I think there's no point

19   in further addressing that beyond what's in our papers.

20             With regard to, you know, 523(a)(6), which is

21   another instance in which the debtor has made a

22   collateral estoppel argument, I think we've run up

23   against a situation which the 11th Circuit has made

24   plainly clear, that scales out of trust constitute a

25   willful and malicious injury, or can constitute a willful

1    and malicious injury.

2              And I think the issue, as the cases, you know,

3    sort of lay out, and as they relate to this case is,

4    whether the debtor's involvement in and actions related

5    to the operation of the business are sufficient to

6    trigger that nondischargeability in this -- in the

7    individual debtor's case.  Now, which at the end --

8              THE COURT:  Now, your argument is that if we

9    have a person who is in control of a car dealership, and

10   there's floor plan financing, and let's say the car

11   dealership is going down the tubes, and the person in

12   control pays the real estate taxes rather than -- and

13   lies to the lender, rather than paying the lender on a

14   vehicle that has been sold, so that's an intentional and

15   knowing violation of the financing documents, that that

16   alone is sufficient to support relief under (a)(6).

17             MR. COHEN:  That alone, recognizing that it is

18   a conversion of the lender's collateral, and consistent

19   with the Court's decisions in West Lake Flooring, Ford

20   Motor Credit versus Owens, and related cases that we cite

21   in our papers, yes, that that is sufficient to support a

22   willful and malicious injury in the context of this case.

23             THE COURT:  So a knowing breach of contract is

24   an (a)(6) claim.

25             MR. COHEN:  A knowing conversion of collateral,

1   which is exactly what happened here, proceeds of the sale

2   of SAFS' collateral, which are also under the financing

3   documents, its collateral, were converted here and yes,

4   that that -- you know, that was -- that conduct was

5   sufficient to -- it either was an intentional act, the

6   purpose of which is to cause injury, or which is

7   substantially certain to cause injury, which you know,

8   was the standard articulated by the 11th Circuit in the

9   Wisenburg case, it would say.

10          THE COURT:  Right.  So in the Kawaauhau case,

11  which is the Supreme Court case on this issue, they did

12  refer the substantial certainty standards.  The very --

13  the facts of that case are very strange, and it probably

14  never should have been taken up by the Supreme Court

15  because it was just a medical malpractice case, but --

16          So the substantial certainty standard, have you

17  studied that and do you have any view on what would need

18  to be proven to satisfy the substantial certainty

19  standard in a case where the harm is not a physical tort?

20          MR. COHEN:  I haven't addressed you know, the

21  specific requirements as it relates to the Supreme Court

22  case.  But again, I've reviewed the 11th Circuit's

23  pronouncements on the issue with regard to floor plan

24  financing.  And you know, the facts of the Ford Motor

25  credit case certainly seem to be very similar to, if not

1    identical to those here.

2            THE COURT:  Weren't there a couple of

3    pre-egrigious circumstances in that case that were over

4    and above the simple failure to remit proceeds that you

5    described in your facts?

6            MR. COHEN:  Well, the reality is that there may

7    be an issue of fact here as to whether or not those facts

8    and circumstances exist, which is not an issue frankly,

9    that the jury addressed in the context of the Connecticut

10   action.  And those are issues that would preclude summary

11   judgment here and would allow us, Your Honor, to put on

12   our proof with respect to that.

13           We have not undertaken the burden in the context

14   of this proceeding to move for -- you know, to cross move

15   for summary judgment.  And I think the issue is, Your

16   Honor, do the facts and circumstances of this case, you

17   know, rise to the same level, to Your Honor's point, of

18   what occurred in the Ford Motor Credit case to support a

19   finding of willful and malicious injury.

20           THE COURT:  Thank you.

21           MR. OSBORNE:  Your Honor, in response to that

22   point, I believe first of all, the jury, as I said in my

23   papers, I think the jury has spoken.

24           The 11th Circuit also pointed out that we're

25   talking about willful and malicious is more than near

1    recklessness.  And the jury in this case found that the

2    actions would even rise to the level of recklessness.

3                THE COURT:  Right.

4                MR. OSBORNE:  Furthermore, they, in the ruling

5    on the motion to reform the verdict, which is ECF 14-4,

6    the Court even pointed out that there was no evidence as

7    to the so-called fraud damages that result -- that

8    incurred as a result of the misrepresentations made by

9    Autohaus (inaudible) and preowned, as opposed to damages

10   incurred as a result of the violation of the business

11   commercial note.

12               The documents are clear.  The court order was

13   clear.  This was clearly a violation of the contract.  No

14   question.  They didn't make their payments.  It's a

15   breach of contract.

16               But it does not rise to the level, nor have

17   there been allegations to show it rises to the level, nor

18   does -- and I believe again, they tried this case and

19   lost.  And the Court even noted that they addressed to

20   the jury that they were presenting it the way they were

21   presenting it to circumvent the Bankruptcy Court.  And

22   yet the jury still didn't find that way.  And the Court

23   didn't find that way in the subsequent documentation.

24               So I don't believe they've met the standard on

25   those two tasks.

1          MR. COHEN:  Your Honor, the only further

2    response I would say on that is that the issues before

3    the Court and the issues presented to the jury in the

4    Connecticut action were not the issues that are -- that

5    are addressed to the Court in the context of, you know,

6    of the proceedings currently in this adversary

7    proceeding.  There is not an identity with respect to the

8    issues.

9          And again, the real question is whether the

10   conduct, in our case, you know is -- you know, is

11   sufficiently similar to or consistent with, you know, the

12   Court's findings in the Ford Motor Credit -- the 11th

13   Circuit's findings in the Ford Motor Credit case and in

14   the related cases that we cite.  And you know, those are

15   issues that should be left for trial.

16          THE COURT:  Anything else in your presentation,

17   Mr. Cohen?

18          MR. COHEN:  I'd just like to address very

19   briefly, Your Honor, the 727(a)(3) issues with regard to

20   the business records, because I think that at the end of

21   the day informs a whole, you know, a whole host of things

22   here.

23          We have a situation in which in the context of

24   the Connecticut action the debtor withheld the business

25   records asserting his Fifth Amendment rights.  In this

1   action we've come to learn that those records were

2   subsequently destroyed.

3            SAFS has never had an opportunity to fully

4   evaluate and understand the extent, frankly, of the fraud

5   that was perpetrated here, because it doesn't have the

6   deal jackets, and it doesn't have all of the invoice

7   documents that would come with those business records

8   that would allow it, you know, to marshall all of the

9   facts here.

10           There's no question that those business

11  records, you know, would also, or should also explain

12  where the proceeds of the sales out of trust went.  You

13  know, all of which, you know, at the end of the day are

14  germane to understanding you know, both you know, sort of

15  what, if anything -- you know, what, if any benefit the

16  debtor came frankly, individually, other than with

17  respect to his business you know, from those sales out of

18  trust.

19           And you know, and at the end of the day the

20  extent, frankly, of the debtor's involvement in the fraud

21  -- submission of fraudulent bills of sale to SAFS for

22  purposes of obtaining financing.  All of that ties in

23  directly with you know, the ability to assess the

24  debtor's financial condition, and frankly, the extent and

25  underlying factual predicates related to what is, at the

1    end of the day, the largest creditor claim in this case.

2            So you know, from the standpoint of this

3    adversary proceeding we certainly believe that you know,

4    the record supports a finding of -- a denial of discharge

5    based on the failure to maintain business records.

6            As I said --

7            THE COURT:  Thank --

8            MR. COHEN:  Go ahead.  I'm sorry.

9            THE COURT:  No, no, go ahead.  I was just

10   saying thank you.

11           MR. COHEN:  Okay.

12           MR. OSBORNE:  And in response, Your Honor, I've

13   said it in my brief, I'll say it again, the business

14   closed down four years before this bankruptcy was filed.

15   This was not an immediate.

16           If their concern was, where did the assets go,

17   the banking records would have shown that, they can

18   always subpoena the bank if that was an issue and they

19   say we don't have the records.  The records -- those

20   records would be available.

21           They also don't refute that they had auditors,

22   their own auditors in there for five weeks reviewing all

23   records before the business closed, in the few months

24   before it closed, and that they were given access to the

25   accountant with whatever records we still maintained

```
 1    after we closed, that the accountant took to the IRS

 2    auditors, they were given access and the ability to copy

 3    those records.

 4          It just -- the cases that they cite are

 5    inapposite.  This is not a case where you had a business

 6    that just folded and then the guy filed bankruptcy

 7    immediately.  It was four years later, after an IRS

 8    audit.  And I don't believe he's required to keep the

 9    records that long after the audit.

10          And again, I think they had access in a timely

11    fashion.  If the only issue they're saying is, we want to

12    know where the money went, again, the bank records would

13    show that.  That's still around.

14          So I don't see it.  I believe they haven't set

15    forth a legal basis.

16          THE COURT:  All right.  Anything else, Mr.

17    Cohen?

18          MR. COHEN:  Just briefly in response, Your

19    Honor.

20          I think, to break it down very simply, the

21    record is clear that the debtor destroyed or caused to be

22    destroyed, you know, or failed to maintain the business

23    records after the operation closed.

24          All at a time when the debtor understood that

25    you know, SAFS had a claim, that there were issues
```

1  related to that claim, and you know, and that those

2  records were never turned over in the context of the

3  litigation.

4          The record is also clear that, you know, as I

5  said, that SAFS was denied an opportunity to review the

6  records during the context of the Connecticut litigation

7  by virtue of the debtor's assertion of his Fifth

8  Amendment rights.

9          The record is also clear that the business

10  records frankly, are critical to understanding the extent

11  of the fraud, the disposition of the proceeds of the

12  collateral and you know, and really are germane to the

13  key issues before the Court in this adversary proceeding.

14          You know, what the record is devoid of, Your

15  Honor, is admissible evidence as opposed to attorney

16  statements and you know, what at the end of the day was a

17  late filed affidavit in the context of the reply

18  regarding the facts and circumstances surrounding the

19  debtor's decision to destroy the business records.

20          Once those facts had been determined at trial,

21  the Court can determine whether the debtor was justified

22  in his decision to destroy the business records.  That's

23  really what the issue is here, Your Honor.

24          And I will note that SAFS disagrees with

25  certain of the new facts that were presented in

1  conjunction with the reply, and would intend to refute

2  those at trial.

3           THE COURT:  All right.  Thank you.  Mr.

4  Osborne, anything else?

5           MR. OSBORNE:  No, Your Honor, not on that

6  issue.

7           THE COURT:  All right.  I'm prepared to rule on

8  the summary judgment motion now.  This is the Court's

9  ruling on the defendant's motion for summary judgment on

10  file in this adversary proceeding at ECF.

11           Consistent with Rule 56 made applicable here by

12  Bankruptcy Rule 7056, the Court has reviewed the motion,

13  the joint stipulation of facts at ECF 31, the plaintiff's

14  response at ECF 32, the reply at ECF 39, and the

15  affidavits and other evidence provided by the parties.

16  I've also considered the plaintiff's notice of supplement

17  authority filed at ECF 50.

18           Issue preclusion, also called collateral

19  estoppel, can apply at the summary judgment stage.

20  Because the prior judgment was rendered by a Connecticut

21  State Court, Connecticut collateral estoppel rules apply.

22  The Connecticut rule is the same as in most states,

23  including Florida.

24           Collateral estoppel prohibits the relitigation

25  of an issue of ultimate fact when that issue has been

```
 1    determined by a valid and final judgment after litigation
 2    between the same parties.
 3            Collateral estoppel arises when an issue was
 4    fully and fairly litigated in the prior action, actually
 5    decided necessary to the prior judgment, and
 6    substantially identical to the issue to be decided in the
 7    second action.
 8            The complaint in this case presents seven
 9    counts.  For ease of reference I'll refer to them by
10    number, such as count 1, count 2, et cetera.
11            In the present motion the defendant seeks
12    summary judgment on all seven counts of the complaint.  I
13    will address each count in turn.
14            But first some basic background information.
15    George Davis, the debtor in this Chapter 7 case, is the
16    defendant in this action.  SAFS, Inc. is the plaintiff.
17            The defendant was the sole and managing member
18    of Autohaus of Southington, LLC, which operated a used
19    car dealership in Connecticut.  The plaintiff provided
20    financing to Autohaus and the defendant guaranteed the
21    financing.
22            Autohaus granted a security interest in
23    vehicles and other assets.  Both Autohaus and the
24    plaintiff are Connecticut corporate entities.
25            In the complaint the plaintiff alleges that
```

1   Autohaus and the defendant made various

2   misrepresentations to the plaintiff to induce the

3   plaintiff to lend.  That the plaintiff relied on those

4   misrepresentations, and that the plaintiff has not been

5   paid in full under the lending arrangement.

6           Prior to this bankruptcy case the plaintiff

7   filed suit against Autohaus and the defendant in

8   Connecticut.  Initially the plaintiff pursued Autohaus

9   and the defendant only on contract theories.

10          The plaintiff amended its State Court complaint

11  to include claims against the defendant sounding in

12  fraud, negligent misrepresentation and implied duty of

13  good faith and fair dealing.  The plaintiff sought

14  punitive damages in the Connecticut suit.

15          After a jury trial the Connecticut Court

16  entered judgment against Autohaus and the defendant in

17  the aggregate amount of about 1.3 million dollars.

18          In the Connecticut action the jury answered a

19  series of interrogatories in the verdict form.  In

20  connection with the fraud claim against the defendant the

21  jury determined that the plaintiff had proven by clear

22  and convincing evidence that the defendant "made a false

23  representation and/or failed to disclose material facts

24  to the plaintiff."  That the defendant "knowingly and

25  intentionally made the false representation and/or

1   omission" and that the defendant "made the false

2   representation and/or omission to induce the plaintiff to

3   act thereon."

4          But the jury determined that SAFS had not

5   "proven by a preponderance of the evidence that it relied

6   on the false representation and/or omission to its

7   injury."  Thus the jury awarded no damages on the

8   plaintiff's fraud claim against the defendant.

9          The verdict form included a separate

10  interrogatory asking, "what is the amount of damages

11  sustained by the plaintiff as a result of relying on the

12  false representations and/or omissions made by the

13  defendant Davis."  The jury did not complete that section

14  because they were directed to do so only if they

15  determined that the plaintiff had relied on the false

16  representation and/or omission.

17         The jury reached the same conclusions in

18  connection with the plaintiff's negligent

19  misrepresentation claim against the defendant determining

20  that the plaintiff had not reasonably relied to its

21  injury on false information provided by the defendant.

22         In the Connecticut action the plaintiff sought

23  punitive damages against Mr. Davis.  The jury was

24  questioned on that belief as well.

25         The jury answered no to the question, "Did you

1    find that the conduct of Defendant Davis was outrageous

2    either because he acted with reckless indifference toward

3    the plaintiff's rights, or engaged in conduct that

4    constitutes an intentional and wonton violation of those

5    rights".

6            Now on to each count of the complaint.  Count 1

7    seeks relief under Section 523(a)(2).  From the complaint

8    it was unclear whether this claim is based on Subsection

9    A or Subsection B of that provision.  From the

10   plaintiff's response at ECF 32 and argument today it

11   appears the plaintiff relies on Section 523(a)(2)(B)

12   which makes sense in light of the overall allegations in

13   the complaint.

14           To obtain relief under Section 523(a)(2)(B) the

15   plaintiff must prove by a preponderance of the evidence

16   that the defendant, with intent to deceive, made or

17   published a materially false statement in writing

18   respecting the defendant's or an insider's financial

19   condition on which the plaintiff reasonably relied

20   resulting in liability to the plaintiff.

21           Importantly, Subsection B requires that the

22   misrepresentations be made in writing.

23           Because the defendant is the managing member of

24   Autohaus, Autohaus is an insider of the defendant under

25   Section 10131.  All of the alleged misrepresentations

1   relate to the financial condition of Autohaus.

2         Under prevailing law in this Circuit relief

3   could be pursued only under Subsection B. From the

4   complaint it appears that most, if not all, of the

5   alleged misrepresentations were written.

6         In the Connecticut action the jury specifically

7   found that the defendant made false representations to

8   the plaintiff and that those misrepresentations were made

9   knowingly and intentionally with the intent to induce the

10   plaintiff to rely on the misrepresentations.

11         According to the jury each of these elements

12   was proven by clear and convincing evidence of standard

13   exceeding the preponderance of the evidence standard that

14   applies to all components of this case. Thus, as a

15   result of application of collateral estoppel all of the

16   same elements of the plaintiff's case are proven here.

17         But the jury in the Connecticut case found that

18   the plaintiff did not prove by a preponderance of the

19   evidence that the plaintiff relied on the false

20   representations to its injury. The question is whether

21   that finding is binding here and thus precludes the

22   plaintiff from recovery under Count 1.

23         The plaintiff argues that collateral estoppel

24   does not apply to this jury finding as it relates to an

25   issue that is not identical to the issue before this

1    court.  Specifically the plaintiff argues that the

2    Connecticut jury found that the plaintiff had not relied

3    on the misrepresentations to its injury.  The plaintiff

4    places considerable weight on the inclusion of the

5    phrase, to its injury in the jury interrogatory.

6         The plaintiff posits that the jury's finding

7    implicates two issues, reliance and injury.  The

8    plaintiff then argues that relief under Section

9    523(a)(2)(B) requires proof of reliance but not proof of

10   injury, and so the issues are not identical.

11        The plaintiff also argues that because the jury

12   made a finding involving two separate elements it is

13   impossible to tell whether the jury determined that there

14   was inadequate proof of reliance or inadequate proof of

15   injury, and so collateral estoppel cannot apply.  The

16   plaintiff's arguments are not persuasive.

17        Contrary to the plaintiff's suggestion the

18   subject jury question does not involve two elements.

19   From the structure of the jury interrogatories as a

20   whole, it is unclear -- excuse me -- it is clear that the

21   question at issue was intended to address the reliance

22   element of the plaintiff's fraud claim.  The phrase, to

23   its injury, was included only to clarify that the

24   reliance required to trigger fraud liability must be such

25   that it would result in harm to the plaintiff.

1      The reliance question is followed immediately by

2  a separate jury question addressing the damages.  It

3  would make no sense to ask the jury twice whether damage

4  occurred as a result of reliance on the defendant's

5  misrepresentations.

6      This Court's analysis is supported by an order

7  of the Connecticut Court itself.  In its January 31, 2019

8  order on the plaintiff's motion to set aside the verdict,

9  among other things, the Connecticut Court described this

10 subject jury question as addressing whether the plaintiff

11 relied on the misrepresentation.

12     For example, the Connecticut Court stated, when

13 discussing this interrogatory, "the jury did not find

14 that SAFS did rely on the misstatements."  In other

15 words, the Connecticut Court itself ruled that the

16 plaintiff failed to prove the element of reliance.

17     The identical issue of reliance is before the

18 Court in this adversary proceeding.  The plaintiff's

19 failure on that element estops the plaintiff's claim in

20 Count 1.  The defendant is entitled to summary judgment

21 on Count 1.

22     Even if the plaintiff was correct that the

23 subject jury question addressed independent elements of

24 reliance and injury, the plaintiff is incorrect in its

25 argument that Section 523(a)(2)(B) does not require proof

1    of injury.

2           Unless the plaintiff was injured by its reliance

3    on the defendant's misrepresentations, the plaintiff

4    holds no debt that could be excepted from discharge under

5    Section 523(a)(2)(B).  It is the injury resulting from

6    the plaintiff's misdeed which gives rise to the debt.

7           To succeed on Count 1 the plaintiff must prove

8    both that it reasonably relied on the defendant's

9    misrepresentations, and that it was thereby injured.

10          Even if the subject jury question implicates

11   two separate elements, collateral estoppel would bar the

12   plaintiff's claim under Count 1.

13          The plaintiff's view of the subject jury

14   question could mean only two things.  Either that the

15   plaintiff failed to prove it relied on the defendant's

16   misrepresentations, in which case plaintiff could not

17   have been injured thereby, or that plaintiff did prove

18   reliance but failed to prove that it was injured by that

19   reliance.

20          Since both reliance and injury or damages are

21   required for proof here, even under the plaintiff's

22   twisted view of the jury question, the plaintiff would be

23   barred from relief under Count 1.

24          The recent 11th Circuit opinion cited in the

25   notice of supplemental authority at ECF 50, and that's

1   Harris versus Jayo, J-a-y-o, reported at 3 Federal

2   Reporter 4th, at page 1339, does not assist the plaintiff

3   in its position.

4          The Harris decision stands only for the

5   proposition that a Florida general default judgment

6   entered on a multicount complaint that included fraud

7   based claims that could conceivably have satisfied the

8   requirements of Section 523(a)(2), but where each of

9   those claims included alternative factual allegations

10  which would not have satisfied the requirements of that

11  provision, cannot be accorded collateral estoppel effect

12  in a later dischargeability action.

13         The key section of the decision reads as

14  follows, "In our view when a complaint alleges several

15  alternative and inconsistent factual grounds for a legal

16  claim, and each of those grounds would be independently

17  sufficient to establish the claim, it is impossible to

18  tell which of the grounds a general default judgment was

19  based on.  And if one of those alternative factual

20  grounds is insufficient to meet the elements of fraud

21  under the Bankruptcy Code the issues cannot be deemed

22  identical."

23         In this case we do not have a default judgment

24  where the Court cannot determine what was and was not

25  proven in the prior case, we have a jury verdict with

1    detailed findings.  The Harris decision provides no

2    guidance here.

3            Count 2 seeks relief under Section 523(a)(4).

4    523(a)(4) provides for relief under three separate legal

5    theories.  One, fraud or defalcation while acting in a

6    fiduciary capacity.  Two, embezzlement.  Or three,

7    larceny.

8            In the motion for summary judgment the

9    defendant argues that the complaint lacks allegations of

10   larceny or embezzlement.  In the response the plaintiff

11   does not argue that it holds claims based in larceny or

12   embezzlement so any such claims are waived.

13           The Court will treat Count 2 as presenting a

14   claim based solely on fraud or defalcation while acting

15   in a fiduciary capacity.

16           For relief under Section 523(a)(4), based on

17   fraud or defalcation while acting in a fiduciary capacity

18   the plaintiff must prove the existence of an express or

19   technical trust under which the defendant acted as

20   fiduciary for the plaintiff.

21           The existence of a general fiduciary obligation

22   under applicable law is not sufficient for relief under

23   this provision.  There must be a formal or technical

24   trust.

25           Even if any of the loan documents between the

1   plaintiff and Autohaus established an express trust, and

2   it appears that they did not, the defendant is not a

3   party to those documents.  The defendant is a direct

4   party only to the guarantee, which did not establish an

5   express trust.

6          The plaintiff provided no proof of the

7   existence of an express or technical trust under which

8   the defendant acted as fiduciary for the plaintiff.  The

9   defendant is entitled to summary judgment on Count 2.

10         Count 3 seeks relief under Section 523(a)(6).

11  The plaintiff argues that the defendant intended to harm

12  the plaintiff, and was substantially certain harm would

13  result, when he transmitted false bills of sale, when he

14  made other false statements to the plaintiff in

15  connection with securing financing from the plaintiff,

16  and when he caused Autohaus to retain and then dissipate

17  proceeds from vehicle sales that were due to the

18  plaintiff.

19         The plaintiff argues that the defendant's

20  actions were malicious because they were done in

21  conscious disregard of duties owed to the plaintiff and

22  to serve the defendant's purposes.

23         To obtain relief under Section 523(a)(6) the

24  plaintiff must show that the defendant's actions were

25  both willful and malicious.  To prove willfulness the

1    plaintiff must show either that the defendant intended to

2    harm the plaintiff, or that defendant's intentional act

3    was substantially certain to harm the plaintiff.

4            In the context of financial harm such as this,

5    as opposed to physical torts, the substantial certainty

6    standard requires proof of the defendant's subject of

7    understanding that his or her actions would harm the

8    plaintiff.

9            For a more complete analysis on that issue I

10   refer you to my own decision in Kane, that's K-a-n-e,

11   which is reported at 470 Bankruptcy Reporter 902, and

12   that matter is discussed at pages 939 through 944.

13           Importantly for this case, mere recklessness on

14   the part of the defendant is not sufficient to satisfy

15   the willfulness standard.  To prove maliciousness the

16   plaintiff must show that the defendant's actions were

17   wrongful and without just cause.

18           In the Connecticut action the plaintiff sought

19   punitive damages against the defendant and Autohaus.  In

20   that case the plaintiff made the same allegations of

21   wrong doing that it presents here.  After considering the

22   evidence the jury found that the plaintiff failed to

23   prove that the defendant acted even with reckless

24   indifference toward the plaintiff's rights.

25           The issue presented in the Connecticut case,

1   meaning the wrongfulness of the defendant's actions with

2   regard to the plaintiff is identical to that under

3   consideration here.  Under the rules of collateral

4   estoppel the jury's findings on the wrongfulness of the

5   defendant's actions is binding in this case.  The

6   defendant is entitled to summary judgment on Count 3.

7          Before I move on to the count seeking denial of

8   discharge I'd like to comment on the plaintiff's strategy

9   in the Connecticut litigation as it relates to this case.

10          When the plaintiff filed its initial complaint

11  in Connecticut it sought judgment against the defendant

12  based solely on his guarantee.  If the plaintiff had

13  obtained only that judgment the plaintiff could still

14  have sought relief under Sections 523(a)(2), (a)(4) and

15  (a)(6) to the extent applicable if the defendant later

16  filed a bankruptcy petition.

17          Even if the plaintiff's State Court judgment

18  was based solely on contract the plaintiff could still

19  pursue those claims here.  I point you to my decision in

20  Kane, reported at 470 Bankruptcy Reporter 902, which was

21  upheld by the 11th Circuit.

22          In that case the prebankruptcy judgments were

23  based on unjust enrichment and quantum meruit, which

24  obviously are not fraud based claims or claims that are

25  typically associated with intentional torts.  And yet I

1    excepted those claims from discharge under Section

2    523(a)(6).

3            Of course if one has a State Court judgment

4    based in fraud, for example, this may greatly facilitate

5    a dischargeability action in a later bankruptcy by the

6    defendant.  It appears this was the plaintiff's thinking

7    in the State Court action.

8            The plaintiff amended its Connecticut complaint

9    to add fraud and punitive damages claims against the

10   defendant, apparently in hopes that the outcome would

11   prove useful if the defendant filed bankruptcy.  That was

12   my impression of the plaintiff's strategy even before I

13   read the Connecticut Court's April 4, 2019 order, which

14   recounts that the plaintiff's own counsel actually told

15   the jury this was their strategy.

16           The problem is that the plaintiff was not

17   successful on the fraud and punitive damages claims in

18   the Connecticut action.  In spite of that the plaintiff

19   wants to try again here, but the plaintiff's strategy has

20   backfired.  Once you lose on such claims you don't get to

21   try again in Bankruptcy Court.

22           Count 4 seeks denial of discharge under Section

23   727(a)(3).  The plaintiff argues that defendant's

24   discharge should be denied because when he filed this

25   bankruptcy case he no longer had any business records of

1    Autohaus.

2             Autohaus ceased business more than four years

3    prior to the filing of this case.  This was followed by

4    substantial litigation by the plaintiff against both

5    Autohaus and the defendant, during which time the

6    plaintiff had access to Autohaus' primary business

7    records.

8             The plaintiff obtained a judgment against

9    Autohaus and the defendant based apparently on those very

10   business records.

11            Indeed, when you read the Connecticut Court's

12   orders that have been filed in this matter it is clear

13   that the trial included presentation of relevant business

14   records.  Thereafter the records were destroyed.

15            Given this history, for purposes of this

16   bankruptcy case, there is no reason to believe that

17   Autohaus' business records would provide any insight into

18   the defendant's personal financial condition or his

19   personal business transactions.  Given this history it is

20   reasonable that the defendant does not now have

21   possession of Autohaus' business records.

22            The plaintiff provides no evidence that would

23   cause the Court to rule otherwise.  The defendant is

24   entitled to summary judgment on Count 4.

25            Count 5 seeks denial of discharge under Section

1    727(a)(4).  The plaintiff alleges that the defendant made

2    false oaths in his bankruptcy petition and schedules by

3    understating his income, understating the value of a

4    vehicle, and failing to list his ownership in an entity

5    called 910 Meridan Waterbury Turnpike, LLC.

6           In his motion for summary judgment the

7    defendant points to his pay stubs filed in connection

8    with his schedules which support the income data provided

9    in his schedules.  In his affidavit the defendant states

10   that he did on line research to estimate the value of his

11   vehicle.

12          In response to the motion for summary judgment

13   the plaintiff does not address the income or vehicle

14   related allegations, and so the defendant's motion is not

15   opposed on those parts of Count 5.

16          With regard to the ownership interest in 910

17   Meridan Waterbury Turnpike, LLC the defendant states that

18   he did not realize that his former business partner had

19   continued to file annual reports for the entity.  The

20   defendant provided an affidavit from his former business

21   partner that supports this contention.

22          From the evidence presented the defendant did

23   not knowingly and fraudulently fail to list his ownership

24   in the entity because the defendant did not know that the

25   entity continued to exist.

1      The plaintiff presented no evidence to counter

2  this conclusion.  The defendant is entitled to summary

3  judgment on Count 5.

4      Count 6 seeks denial of discharge under Section

5  727(a)(5).  The plaintiff argues that the defendant

6  failed to explain the satisfactory "the loss of proceeds,

7  assets, revenue or collateral from Autohaus to meet

8  defendant's liabilities."

9      In particular the plaintiff argues that the

10  defendant failed to explain the disposition of more than

11  $550,000 from vehicle collateral sold out of trust.  The

12  plaintiff complains that defendant failed to explain what

13  happened to the assets of Autohaus, not the defendant's

14  own assets.

15      Nowhere in the complaint, or in the evidence

16  now before the Court, does the plaintiff explain how

17  assets of Autohaus could have been available to satisfy

18  the defendant's personal creditors.

19      Based on the allegations in the complaint and

20  the evidence before the Court on this motion, there is no

21  reason for the Court to conclude that any of the assets

22  of Autohaus were available to meet the defendant's

23  personal liabilities.  The defendant is entitled to

24  summary judgment on Count 6.

25      Count 7 seeks dismissal of this bankruptcy case

1  on the grounds that the defendant filed the petition in

2  bad faith.  In support of that argument the plaintiff

3  points only to the concealment of income, assets,

4  property, collateral and business records elsewhere

5  addressed in the complaint.  In other words, all of the

6  allegations under Count 7 are relating to allegations in

7  support of the relief requested under Section 523 or 727.

8          As this Court has previously ruled, when

9  seeking to dismiss a Chapter 7 case based on bad faith,

10  it is not sufficient to allege only actions that would

11  support relief under Section 523 or Section 727.  Facts

12  and circumstances that would support excepting a

13  particular debt from discharge or denial of discharge by

14  themselves cannot be the cause for dismissal of a Chapter

15  7 case.

16          For a more complete discussion of this issue I

17  direct you to my decision in Kane and Kane, reported at

18  406 Bankruptcy Reporter 163.  This particular issue is

19  addressed at pages 168 and 169, but really the entirety

20  of that decision is helpful here.

21          Based on the allegations presented in the

22  complaint, and taking into account the arguments made in

23  the response, there is not sufficient basis to dismiss

24  this Chapter 7 case.  The defendant is entitled to

25  summary judgment on Count 7.

```
 1              In addition to these substantive reasons to
 2    deny the motion to dismiss this bankruptcy case, I note
 3    that at motion to dismiss must be served on all
 4    creditors.  This request for relief should have been
 5    pursued by motion filed in the main bankruptcy case.
 6              So for the foregoing reasons the motion for
 7    summary judgment will be granted in its entirety.  I'll
 8    enter one order granting the motion, and I will enter a
 9    separate judgment in favor of the defendant.
10              Gentlemen, thank you very much for your time in
11    briefing the motion.  I appreciate it.
12              Is there anything upcoming in this case that I
13    need to cancel in light of the ruling today?
14              MR. OSBORNE:  There might be a pretrial still
15    on the calendar, but I'm not sure when it is off the top
16    of my head.
17              THE COURT:  It will be automatically canceled
18    when judgment is entered.  Correct, Ms. Leonard?  Yes.
19              Anything else?
20              MR. OSBORNE:  I don't believe so.
21              THE COURT:  Very good.  Thank you very much.
22    Good morning.
23              MR. COHEN:  Thank you, Your Honor.
24                 (The proceedings were concluded.)
25
```

Page 40

**CERTIFICATION**

**STATE OF FLORIDA**

**COUNTY OF PALM BEACH**


        I, Jacquelyn Ann Jones, Shorthand Reporter and
Notary Public in and for the State of Florida at Large,
do hereby certify that the foregoing proceedings were
transcribed by me from an audio recording held on the
date and from the place as stated in the caption hereto
on page 1 to the best of my ability.


        WITNESS my hand this  14th  day of  October,
2021.



_____

Jacquelyn Ann Jones

Court Reporter and Notary Public

in and for the State of Florida at Large

My commission expires: February 18, 2025