**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO. 9:21-cv-81750-DMM
BANKRUPTCY CASE NO. 20-17930-EPK
BANKRUPTCY ADV. NO. 20-01384-EPK

GEORGE D. DAVIS,

    Debtor.

_____/

SAFS, INC.,

Appellant,

v.

GEORGE D. DAVIS,

Appellee.

_____/

## APPELLEE'S RESPONSE BRIEF

LES S. OSBORNE, ESQ.
RAPPAPORT OSBORNE & RAPPAPORT, PLLC
Counsel for Appellee
Suite 203, Squires Building
1300 North Federal Highway
Boca Raton, Florida 33432
Telephone:  (561) 368-2200
Telefax: (561) 338-0350

## **TABLE OF CONTENTS**

Table of Authorities……………………………………………………………………….………3

Statement of Jurisdiction………………………………………….……………………….……5

Statement of the Issues and Standard of Review……………….………………………6

Statement of Oral Argument……………………………………………….………….…......7

Statement of the Case and Facts…………………………………………………………...8

Introduction………………………………………………………………………………….13

Summary of the Argument………………………………………………………………...17

Argument……………………………………………………………….…………………19

Conclusion……………………………………………………………………….…….....28

Certificate of Service…………………………………………………………….……….28

2

# TABLE OF AUTHORITIES

**CASES**

*Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir. 1987)…………………23, 24, 25

*In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)……………………………………….……24

*In re Jennings*, 670 F.3d 1329, 1332 (11th Cir. 2012)…………………………...……25, 26

*Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane)*, 755 F.3d
1285 (11th Cir. 2014)…………………………………………………………...25, 26

In *Kane vs. Stewart Time and Fox & Bianchi, P.A.*, 485 B.R. 460 (S.D. Fla. 2013)………26

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)…………………………………….25, 26

*In re Lorenzo*, 606 F. App'x 548 (11th Cir. 2015)…………………………………...……21, 22

*In re Monson*, 661 F. App'x 675 (11th Cir. 2016)……………………………………...24, 25

*United States v Curtis* 380 F.3d 1308, 1310 (11th Cir. 2004)………………………………13

*United States v Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001)………………………………13

*In re Walker*, 48 F.3d 1161, 1165 (11th Cir. 1995)…………………………………………26

*Wilkerson v Grinnel Corp*, 270 F.3d 1314, 1322 (11th Cir. 2001)…………………………13

**STATUTES**

11 U.S.C. §523(a)(2)………………………………………………………………………12

11 U.S.C. §523(a)(4)…………………………………………………………………….12, 24

11 U.S.C. §523(a)(6)………………………………………….……12, 13, 17, 23, 24, 25, 26

11 U.S.C. §727(a)(3)…………………………………………………...12, 13, 17, 19, 21, 23

11 U.S.C. §727(a)(4)……………………………………………………………………...12

11 U.S.C. §727(a)(5)………………………………………………………………………12

**RULES**

Fed. R. Bank. P. 8019……………………………………………………………………..7

S.D. Fla. L.R. 87.4(g)…………………………………………………………………....…7

## **STATEMENT OF JURISDICTION**

Appellee agrees with the Statement of Jurisdiction set forth by the Appellant.

## <u>STATEMENT OF ISSUES AND STANDARD OF REVIEW</u>

Appellee generally agrees with the Statement of Issues and Standard of Review as set forth in the Appellant's Initial Brief.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Fed. R. Bank. P. 8019 and S.D. Fla. L.R. 87.4(g), Appellee believes that the record on appeal is clear and that oral argument will not aid the Court in rendering its determination of this appeal.

## STATEMENT OF THE CASE AND FACTS

For ease of reference, Appellant, SAFS, Inc., will be referred to as SAFS or Appellant.   Appellee, George D. Davis, will be referred to as Davis or Appellee. References to the record on appeal will be designated as by its ECF Number in the Bankruptcy Court (ECF - __).  References to the transcript of the hearing before Judge Kimball on September 1, 2021, will be designated as (T- _).

## STATEMENT OF THE FACTS

The Statement of Facts set forth by the Appellant are argumentative and go well beyond the undisputed facts.  The stipulated facts relevant to this appeal are contained in the Joint Stipulation of Facts Regarding Defendant's Motion for Summary Judgment (ECF 31) as follows:

> 3.      Davis is a Florida resident and was the sole member of Auto House Southington, LLC, ("Auto House") a Connecticut Limited Liability Company.   Auto House operated a used car dealership in Southington, Connecticut.
>
> 4.      Davis also served as the Managing Member of Auto House.
>
> 5.      The Plaintiff, SAFS, is a Connecticut Corporation located in East Windsor, Connecticut that provides automobile financing services.
>
> 6.      On or about September 13, 2006, SAFS, as Lender, entered  into an Agreement with Auto House as Borrower, for the purposes of providing certain financial consulting and other services to Auto House with regard to the purchase of motor vehicles and/or obtaining, preparing for sale and holding for sale such motor vehicles. A true correct copy of the Fee Agreement is attached as Exhibit "A" to the Complaint to Determine Dischargeability of Debt. [ECF-1].

7.     By Security Agreement dated September 13, 2006 (the "Security Agreement"), Auto House granted SAFS a security interest in, among other things, all used vehicles purchased from SAFS and financed by SAFS (the "Vehicle Collateral and all proceeds of the Vehicle Collateral, including the proceeds of insurance. A true and correct copy of the Security Agreement is attached as Exhibit "B" to the Complaint Determine Dischargeability of Debt. [ECF – 1].

8.     Defendant Davis executed and delivered to SAFS a Letter of Guarantee (the "Guarantee") dated September 13, 2006, wherein he "unconditionally guarantee[d] to [SAFS] full and prompt payment at maturity, including any accelerated maturity, of any and all liabilities owed to [SAFS] by [Auto House]." A true and correct copy of the Guarantee is attached as Exhibit "C" to the Complaint to Determine Dischargeability of Debt. [ECF – 1].

9.     In furtherance of the Fee Agreement, Security Agreement  and Guarantee, SAFS, as lender, and Auto House, as borrower, entered into a  series of promissory notes evidencing amounts loaned by SAFS to Auto House under the Agreement (the "Notes" and, together with the Fee Agreement, the Security Agreement and the Guarantee, the "Loan Documents").

10.    In addition to the amounts advanced by SAFS to Auto House under the Notes, SAFS from time to time extended additional funds to Auto House in excess amount of the Notes consistent with the terms and purposes of the Loan Document "Additional Advances").

11.    In order to obtain from SAFS advances under the Notes and/or Additional Advances, as was customary in the regular course of dealing between SAFS and Auto House, Auto House submitted Floor Plan Requests to SAFS, which set forth, among other things, a list of new Vehicle Collateral to be acquired by Auto House, the amount to be paid by Auto House for the new Vehicle Collateral, and the total amount that Auto House required from SAFS as either advances under the Notes or Additional Advances (the "Floor Plan Requests").

12.    In connection with each Floor Plan Request, SAFS required Auto House to submit copies of the following documents: (i) the bill of sale for Auto House's acquisition of

the vehicle; (ii) the title to the vehicle; and (iii) an NADA Price Report (or similar document) for the vehicle.

13.     During the course of the parties' relationship, Auto House sold Vehicle Collateral without notifying SAFS of the sale or remitting the sales proceeds to SAFS as required by the Loan Documents, a practice commonly referred to as a "sale out of trust." To this day, Auto House has not paid SAFS for certain vehicles that Auto House sold out of trust.

14.     Auto House ceased doing business in 2016.

15.     In connection with the Connecticut Action (as defined below), SAFS served document requests upon Davis and Auto House seeking, among other things, production of the Auto House business records.

16.     On or about October 4, 2016, SAFS filed a lawsuit in the Superior Court of Connecticut against Auto House and Davis for breach of contract and breach of guaranty, respectively (the "Connecticut Action". A true and correct copy of the initial Complaint is attached as Exhibit "A" to the Motion for Summary Judgment [ECF – 14].

17.     In 2017 the Connecticut Action Complaint was amended to include additional counts against Auto House and Davis and added additional parties to the lawsuit. A true and correct copy of the Amended Complaint filed by Plaintiff on February 2, 2017 is attached as Exhibit "B" to the Motion for Summary Judgment. [ECF – 14].

18.     Of the thirteen (13) counts in the Amended Complaint, only counts 2, 4, 5 & 6 were directed at Davis.

19.     A jury trial was held in the Connecticut Action in 2018.

20.     Following the trial, the jury returned a verdict in favor of SAFS and against Defendant in the Connecticut Action and awarded SAFS damages in the amount of $918,080.80.

21.     By Order dated January 31, 2019, the Court in the Connecticut Action reformed the verdict by granting an additur in the amount of $118,713.29. With the additur, the

Court increased the award in favor of SAFS to $1,036,819.49.

22.    By Order dated April 4, 2019, the Court in the Connecticut Action awarded SAFS attorneys' fees in the amount of $287,508.00.23.

23.    Judgment entered in the Connecticut Action in favor of SAFS and against Defendant in the total amount of $1,324,327.49, virtually all of which remains unsatisfied.

24.    A true and correct copy of the Jury Interrogatories and Verdict Form as to Defendant Davis dated December 6, 2018 are attached as Exhibit "C" to the Motion for Summary Judgment. [ECF – 14].

25.    After the jury verdict was entered, SAFS filed a Motion to Reform Verdict, to Set Aside Verdict, for Judgment Notwithstanding the Verdict and for Additur, dated January 13, 2019. A true and correct copy of the Court's ruling on the Plaintiff's Motion to Reform Verdict, Set Aside Verdict, for Judgment Notwithstanding the Verdict and for Additur is attached as Exhibit "D" to the Motion for Summary Judgment. [ECF – 14].

26.    A true and correct copy of the Court's order ruling for Attorney's Fees and Costs dated April 4, 2019 is attached as Exhibit "E" to the Motion for Summary Judgment. [ECF – 14].

27.    Debtor filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on July 21, 2020.

Additional undisputed and unrepeated facts are as follows:

Prior to Auto House's closure, SAFS sent auditors to Auto House (approximately four months before it closed), and those auditors were given full access to all books and records of Auto House.  They were on site for five weeks (ECF – 39, pg 7).

After Auto House closed, many of the financial records were given to Davis's accountant as the IRS had scheduled an audit (ECF – 39, pg 7).

After the IRS completed its audit, the auditor informed Davis he was no longer required to maintain these records.  Around the same time, SAFS requested access to those records, which was given.  SAFS went to the accountant's office, reviewed all of the documents and made copies of whatever it wanted.  (ECF 39 – pg 8).

After SAFS made its copies and reviewed the documents, the documents were ultimately destroyed as Davis did not believe he needed to keep them. (ECF – 39, pg 8).

After the trial in Connecticut, the jury specifically found that no fraud existed, and that Davis' actions did not even rise to the level of recklessness.  (ECF – 14-3, pg 4-6).

On October 26, 2020, SAFS filed an adversary proceeding against Davis in the Bankruptcy Court. This Complaint contained seven counts seeking objection to dischargeability 11 U.S.C. §523(a)(2), (4) and (6), as well as objecting to discharge pursuant to 11 U.S.C. §727(a)(3), (4) and (5).  The final count sought dismissal of the bankruptcy as a bad faith filing without citing to any specific provision of the law authorizing such a dismissal. (ECF - 1). Davis filed his Answer and Affirmative Defenses on November 23, 2020 (ECF - 5).  Davis then filed a Motion for Summary Judgment on February 12, 2021. (ECF - 14).

SAFS filed its response to the Motion for Summary Judgment after doing additional discovery on June 25, 2021 (ECF - 32).  A corrected replacement was filed at (ECF - 34) on June 29, 2021.  Davis filed his reply on July 16, 2021 (ECF - 39).  The Court held a hearing on September 1, 2021. (ECF - 69 transcript).  The Court entered an Order Granting Summary Judgment and Final Judgment on September 2, 2021.

(ECF - 51 and 52, respectively).  A Notice of Appeal was timely filed on September 16, 2021 and this appeal ensued.

Appellant filed its Initial Brief on November 15, 2021. The Initial Brief only addresses two of the seven counts of its Complaint, specifically 11 U.S.C. §523(a)(6), Count three and 11 U.S.C. §727(a)(3), Count four[1].

## INTRODUCTION

From its inception, this case has been nothing more than a simple breach of contract action.  Despite this fact, and knowing that the initial lawsuit was going to cause a subsequent bankruptcy, SAFS employed a shotgun approach to attempt to create a non-dischargeable debt where none existed.

SAFS, as Plaintiff, filed its initial Complaint against Davis and Auto House of Southington, LLC, ("Auto House") on October 4, 2016.  (ECF – 14, Ex "A").  This Complaint was a simple two count Complaint, seeking breach of contract against Auto House, and breach of contract/guarantee against Davis. On February 2, 2017, SAFS filed an Amended Complaint. (ECF – 14, Ex "B").  The Amended Complaint contained 13 counts.  Of these counts, only counts two, four, five and six were directed at Davis.  Count one was a breach of contract against Auto House.  Count two was for breach of guarantee against Davis.  Count three was unjust enrichment against Auto House only.  Count four was for fraud against Davis and others.  Count five was for negligent misrepresentation against Auto House, Davis and others.  Count six was for breach of implied duty of good

---

[1] It is a deep rooted appellate doctrine that any issues or contentions that appellant does not timely raise or properly develop in an initial brief are deemed abandoned by the appellant . . See generally *United States v Curtis* 380 F.3d 1308, 1310 (11th Cir. 2004) (issues not raised by a [appellant] in his initial brief are deemed waived); *United States v Ford*, 270 F.3d 1346, 1347 (11th Cir. 2001); "our well established rule is that issues and contentions not timely raised in the briefs are deemed abandoned"; *Wilkerson v Grinnel Corp*, 270 F.3d 1314, 1322 (11th Cir. 2001) "since *Wilkerson* did not raise this issue until her supplemental reply brief, we deem it abandoned…"

faith against Auto House and Davis.  Count seven was for conversion against Auto House only.  Count eight was for theft against Auto House only.  Count nine was for fraud and unfair trade practices against Auto House only.  The remaining counts were fraudulent transfer counts against third parties.

As previously noted, SAFS filed an initial Complaint on October 4, 2016.  As stated in the Amended Complaint, after alleging it was owed $2,753,046.00, ten days after filing its initial Complaint, SAFS took the following actions:

> 28.     On October 14, 2016, SAFS exercised its rights under the Uniform Commercial Code to repossess the Vehicle Collateral from Auto House.  In total, SAFS repossessed Sixty-Six (66) motor vehicles (the "Repossessed Vehicle Collateral").
>
> 29.     On October 18, 2016, SAFS served a Notice of Disposition of Collateral (the "Notice of Disposition") upon Auto House, G. Davis and other interested third parties specifying the Repossessed Vehicle Collateral and providing notice that the Repossessed Vehicle Collateral would be sold or otherwise disposed of at a private sale sometime after October 28, 2016.
>
> 30.     Subsequent to service of the Notice of Disposition, on or after October 28, 2016, SAFS sold by private sale or otherwise disposed of the Repossessed Vehicle Collateral.
>
> 31.     After liquidation of the Repossessed Vehicle Collateral, approximately Eight Hundred Sixty-Six Thousand Three Hundred and Ninety Six and 00/100 Dollars ($866,396), not including costs and attorneys' fees, remains due, owing and unpaid by Auto House to SAFS.

(ECF – 14, Ex "B", paragraphs 28 through 31).

Therefore, ten days after filing the initial Complaint, SAFS repossessed all of the assets owned by Auto House, thereby forcing Auto House to go out of business.  Realizing that it had put Auto House out of business, and that it would have no other way

to thereafter earn funds, SAFS expanded the scope of its case to attempt to make it bankruptcy proof.

In fact, ruling upon SAFS' Motion for Attorney's Fees and Costs, on page four, the State Court noted:

> Attorney Cohen, who  handled this action for SAFS, explained to the jury in his closing argument that SAFS was pursuing fraud damages because they were not dischargeable in bankrupcty.[1] While this argument was clearly improper when addressed to the jury, it did accurately describe the  plaintiffs strategy in litigating this case.  The plaintiff had a guarantee from George Davis that he would pay for all debts incurred by Auto House.  The amounts loaned by SAFS to Auto House, and the reduction of those amounts by proceeds of SAFS' sale of repossessed vehicles were not contested by the defendants.

(ECF – 14, Ex "E", pg 4).

In fact, the Bankruptcy Court noted in its oral ruling (ECF – 69, T - 33 to 34):

> Before I move on to the count seeking denial of discharge I'd like to comment on the plaintiff's strategy in the Connecticut litigation as it relates to this case.  When the plaintiff filed its initial complaint in Connecticut it sought judgment against the defendant based solely on his guarantee.  If the plaintiff had obtained only that judgment the plaintiff could still have sought relief under Sections 523(a)(2), (a)(4) and (a)(6) to the extent applicable if the defendant later filed a bankruptcy petition...
>
> Of course if one has a State Court judgment based in fraud, for example, this may greatly facilitate a dischargeability action in a later bankruptcy by the defendant.  It appears this was the plaintiff's thinking in the State Court action.
>
> The plaintiff amended its Connecticut complaint to add fraud and punitive damages claims against the defendant, apparently in hopes that the outcome would prove useful if the defendant filed bankruptcy.  That was my impression of the plaintiff's strategy even before I read the Connecticut Court's April 4, 2019 order, which recounts that the plaintiff's own counsel actually told the jury this was their strategy.

> The problem is that the plaintiff was not successful on the fraud and punitive damages claims in the Connecticut action. In spite of that the plaintiff wants to try again here, but the plaintiff's strategy has backfired.  Once you lose on such claims you don't get to try again in Bankruptcy Court.

The Bankruptcy Court correctly stated the law; once you try a case and lose, you may not re-litigate those facts.  That is what collateral estoppel is all about.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court correctly granted Summary Judgment as to Count four seeking to deny discharge pursuant to 11 U.S.C. §727(a)(3) for failure to maintain books and records. The unrefuted evidence shows that SAFS was given full access to these documents prior to Davis' former business closing.  In fact, SAFS had auditors reviewing the documents for over five weeks.  The business did then close down and records were transferred to an accountant.  SAFS was given access to the records again with the accountant.  Thereafter, the IRS held an audit and after the IRS audit was completed, Davis no longer needed to maintain the records from this closed business.  The business was closed for four years prior to the bankruptcy proceeding.  SAFS claims it needs the records to determine the true extent of its damages.  This is directly contrary to the specific allegations raised in its Amended Complaint in Connecticut, where SAFS listed specific values and amounts that it had loaned as a lender and how much it had received.  Nothing in these records is germane to this case.  This case is a simple breach of contract case. Unfortunately for SAFS, breach of contract is dischargeable in bankruptcy.   SAFS therefore is throwing as much mud as possible in an effort to circumvent the clear intent of the Bankruptcy Code.  The Bankruptcy Court saw through SAFS' attempts and correctly granted Summary Judgment.

The Bankruptcy Court was further correct in granting Summary Judgment as to Count three pursuant to 11 U.S.C. §523(a)(6).  Once again, in an attempt to circumvent the Bankruptcy Code, SAFS has alleged that, in essence, anytime a contract is breached, it is a willful and malicious act and therefore, the debt should be non-dischargeable.  This is contrary to the Bankruptcy Law.  Case law is clear that in the 11th Circuit, there must be

an intent to injure and some element of malice.  Willfully performing an act that ultimately results in injury is different than a willful injury.  It is also clear that, under 11th Circuit law, mere recklessness is insufficient to meet the standard.  The jury in the Connecticut case specifically found that the actions of Davis did not even rise to the level of recklessness, much less willful and malicious.  In light of the above, the Bankruptcy Court correctly ruled in favor Davis.

<u>**ARGUMENT**</u>

**I.  The Bankruptcy Court correctly granted Summary Judgment as to count four of SAFS' Adversary Complaint pursuant to 11 U.S.C. §727(a)(3).**

11 U.S.C. §727(a)(3) states that a court should deny the debtor a discharge when "The debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers come from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case".

Through argument to the Bankruptcy Court and throughout its Initial Brief, SAFS argues that during the litigation, it did not have access to Davis' records, and further states

> Moreover, Davis did not argue that either he or Auto House ever produced any of Auto House's business records to SAFS, either during the pendency or after the conclusion of the Connecticut Action… He also failed to present any evidence suggesting that the destruction of those records was justified.

Appellant's Initial Brief, pages 21 and 22.

SAFS also presented an affidavit stating that "Neither Davis nor Auto House produced a single document in the Connecticut Action."  Appellant's Initial Brief, page 22; Affidavit of Garrison Hodgkins. (ECF 34, Ex "2").

In the limited context presented, those statements could be looked at as true. However, we do not live in a vacuum.  SAFS ignores the fact that it has never refuted either to the Bankruptcy Court or in its Initial Brief, the Supplemental Affidavit of George D. Davis. (ECF – 39, pg 7-8), which states:

> 2.     The Plaintiff has alleged that I failed to maintain books and records because I no longer have records from AUTOHAUS. This business closed four (4) years ago. Before we closed, the Plaintiff sent auditors into our business (approximately four (4) months before we closed) and they

were given full access to all books and records. They were there for five (5) weeks.

3.    After we closed, many of the financial records were given to my accountant, as the IRS had scheduled us for an audit.

4.    After the IRS completed their audit, the auditor informed me that I was no longer required to maintain these records. Around the same time, the Plaintiff ("SAFS") requested access to these records, which they were given. They went to my accountant's office, reviewed all of the documents and made copies of whatever they wanted.

5.    After all of this happened, the records were then ultimately destroyed as I did not believe I needed to keep them.

The undisputed evidence therefore is that prior to the lawsuit being filed by approximately four months, the accountants for SAFS were given full access to the books and records for a period of five weeks.  This is further supported by the Affidavit of SAFS principal, Garrison Hodgkins, wherein Mr. Hodgkins admits at paragraph 11 that SAFS' audited the records of Auto House. (ECF – 34, Ex "2").

Further, after the business closed, additional records were provided through the accountant.  It was only after all of these records were reviewed by SAFS, and after the IRS completed an audit that Davis was told he no longer needed to keep these records. Thus, there was clear evidence that the business records were provided in a timely fashion, and in fact, the evidence that the destruction of the records was justified was unrefuted.   Despite being unable to refute these facts, SAFS continues to argue in its Initial Brief:

Finally, SAFS established that, because the destroyed Auto House business records are essential to understanding the extent of Davis's schemes and how those schemes enriched

20

> Davis personally and harmed SAFS, there is no question the business records would shed light on Davis's financial condition—especially in light of his personal guarantee of Auto House's obligations.

Appellant's Initial Brief, pages 23.

This argument makes absolutely no sense.   SAFS is a lender.  It loaned a certain amount of money to Auto House.  SAFS knows exactly how much it loaned and how much it got back.  There is no question as to how SAFS was harmed as the exact dollar amount was known.   As set forth in its Amended Complaint, SAFS specifically alleged as of October 28, 2016 that it was owed $2,753,046.00   (ECF – 14, Ex "B").

After liquidating the collateral, SAFS alleged it was still owed $866,396.00 (ECF – 14, Ex "B").  It therefore appears clear that SAFS knows exactly, to the dollar, the amount they were harmed by this breach of contract.  Any argument to the contrary is simply more attempts to circumvent the Bankruptcy Law.

SAFS further seems to misapply case law in the 11th Circuit.  SAFS cited the case of *In re Lorenzo*, 606 F. App'x 548 (11th Cir. 2015), arguing that under nearly identical circumstances to the case at bar, the 11th Circuit found 11 U.S.C. §727(a)(3) to apply to the debtors destruction of business records.

A reading of *Lorenzo* shows that that is simply not accurate.  In *Lorenzo*, the debtor destroyed a computer server that held financial records of the company, "mysteriously lost several other computers containing other records, and indiscriminately shredded most of the closely held company's paper records. For the record, she destroyed and lost detailed air carrier's finances, including payments Lorenzo made while using air carrier's money to cover her personal expenses. But those missing and destroyed records would have shed light on her financial condition".   See Appellant's Initial Brief, page 24, citing *Lorenzo* at

21

552. A reading of the entirety of the case though, shows that is completely inapplicable to the instant case.

In *Lorenzo*, it appears that records were sought and were destroyed during the litigation. Three months after the litigation concluded, the debtor filed bankruptcy, having no records to show her finances personally, and no records of the corporation, which finances were clearly intertwined, by the reading of this case.

In the instant case, Auto House closed four years earlier. Records were provided before its closing. Records were provided after its closing. Auto House went through an IRS audit, and it was only after that audit, nearly four years prior to the filing of the bankruptcy, that the records were destroyed.

Davis' finances over the last four years were not intertwined with the company, the company did not exist. Davis' bank records and tax returns were provided going back years.

On page 27 of its brief, SAFS continues to argue that it needs the Auto House documents because "without a complete set of records, SAFS is unable to decipher the full extent of Auto House's scheme, the amount of money stolen, or where the stolen money ended up". Once again, if this was a true statement, how was SAFS able to allege that the specific amount of in $2,753,046.00 was the amount that was unpaid. How was it able to allege that after offsetting the collateral, it was still owed $866,396.00. Very clearly, SAFS knows exactly how much was not paid back. Also, as the lender, SAFS knows exactly how much it loaned. Any argument to the contrary is simply not accurate.

It was also argued before the Bankruptcy Court (T – 17-18), that the banking records were always available. Those records were not destroyed, and to the extent they

were not readily available, could have been subpoenaed from the bank.  Likewise, Davis's bank records were provided, as were tax returns.  How much money Davis received was clearly something that could have been determined by looking at the records, something SAFS chose not to do.

As it is undisputed, SAFS had access to the bank records before the business closed, as well as some documents after it was closed and that the records existed up through the time of an IRS audit, that banking records are still available and have been provided, and that there has been no argument to the contrary other than at some later date the previously provided records were not available.   It is clear that the argument under §727(a)(3) must fail and the Bankruptcy Court correctly ruled that Summary Judgment should be granted in favor of Davis.  This is especially true in light of the fact that Auto House had been closed for almost four years before the bankruptcy was filed, and that there was simply no evidence that the records of Auto House from four years earlier would show that Davis' financial condition as of the time of filing or anytime in the immediate past for such filing; that in fact that the records had been produced to SAFS, had been produced to the IRS and had been shown for an audit which was completed, there was simply no reason to keep said records.  Under 11 U.S.C. §727(a)(3) the failure to maintain these records was clearly justified under the circumstances as the Bankruptcy Court found and Summary Judgment was properly granted

**II.   The Bankruptcy Court correctly granted summary judgment based upon collateral estoppel as to count three of SAFS' complaint based on 11 U.S.C. §523(a)(6).**

Once again, it cannot be overemphasized that this is a simple breach of contract case.   SAFS is seeking to argue to this Court that any time someone breaches a contract, it is *per se*, a willful and malicious injury.  This is simply not the law.

SAFS opens it argument on page 14 of its Initial Brief on this issue by implying, without stating,  that the law in Connecticut as to collateral estoppel is different from that of Florida.   See Appellant's Initial Brief, pages 14 and 15. This is directly contrary to the position taken by SAFS in front of the Bankruptcy Court.  At page 10 of the transcript (ECF - 69), the Bankruptcy Court asked counsel for SAFS:

> Is there any reason to believe that the Connecticut collateral estoppel rule is different from the Florida one?   I think the answer is no, but I'd just like to know your –
>
> MR. COHEN:  I think the answer is I -- yeah, I would not say -- I would not say they -- to the extent they are different, if at all, it wouldn't be material I wouldn't think in this instance, Your Honor… And I wouldn't argue that.

(T – 10, ln 3-12).

SAFS next argues that the Bankruptcy Court erred because cases such as *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir. 1987) and *In re Monson*, 661 F. App'x 675 (11th Cir. 2016) stand for the proposition that "[I]n this Circuit, a sale out of trust constitutes a *per se* "willful and malicious" injury sufficient to establish a claim under §523(a)(6)."  See Appellant's Initial Brief, page 16.   This is a complete and utter misstatement of the law.    For example, in *Monson*, supra, the debtor had a business partner whom he met in prison.   After they were released, they entered into an agreement to run a business.   The debtor's partner loaned $130,000.00 to the business subject to a security agreement.

24

Once the business relationship fell apart, the debtor purposely took the assets and transferred them to another business, after being specifically requested that they be liquidated to pay the secured debt as required under the party's agreement.  The actions were purposeful and willful and the Court, made a finding that there was an act of fraud on the part of the debtor.   In *Monson*, the 11th Circuit did not hold there was a *per se* willful and malicious injury under §523(a)(6) when assets are sold out of trust.  In *Monson*, the Court cited to several of its other cases, including *Kane v. Stewart Tilghman Fox & Bianchi PA (In re Kane)*, 755 F.3d 1285 (11th Cir. 2014); *In re Jennings*, 670 F.3d 1329, 1332 (11th Cir. 2012) and *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) for the proposition that a debtor commits a "willful" injury when he or she commits an intentional act, the purpose of which is to cause injury or which is substantially certain to cause injury, and that §523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury.   Supra at 1293.  The *Monson* Court further stated "we have determined that 'malicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will".  The Court did state that constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.   *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989).   Nowhere in any of these cases is a sale out of trust, a *per se*, non-dischargeable act.   In fact, sales out of trust are typically found to be dischargeable under 11 U.S.C. §523(a)(4).   SAFS did assert an argument under §523(a)(4), but abandoned it in this appeal.

In *Ford Motor Credit Co. v. Owens*, supra, the facts did involve the sale of assets out of trust and a floor plan agreement.  In this particular case, the debtor sold vehicles out of trust and purposefully transferred those assets to a new business.  A trial was held and

it was determined that his actions were willful and malicious because of all of his actions in this case.  There is one major distinguishing factor however, between *Ford Motor Credit Co. v. Owens* and the instant case.  In the instant case, a jury trial was held, where it was found that the actions were not willful and malicious.

The standard to determine willful and malicious injury is clear.

In *Kane*, the 11th Circuit specifically states:

> A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *In re Walker*, 48 F.3d 1161, 1165 (11th Cir. 1995))… see *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 holding that §523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury).

The *Walker* Court further stated "We have interpreted "willful" to require "a showing of an intentional or deliberate act, which is not done merely in <u>reckless</u> <u>disregard</u> of the rights of another" (citations omitted) [emphasis added].   *Walker* then stated:

> We follow our sister courts in concluding that, in order to be "willful" under section 523(a)(6), the debtor must have intended more than merely the act that results in injury. Congress has been very clear in expressing its intention in section 523(a)(6). The plain language of section 523(a)(6) excepts from discharge debts arising from "willful and malicious injury" rather than "willful and malicious acts which cause an injury."… "Willful' modifies "injury.' Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury.

*Walker* supra at 1164.

In *Kane vs. Stewart Time and Fox & Bianchi, P.A.*, 485 B.R. 460 (S.D. Fla. 2013), the Court further pointed to the fact that the 11th Circuit has held "recklessly or negligently inflicted injuries are not accepted from discharge under §523(a)(6).  *Kane,* supra at 468.

The law is clear.  The actions must be with the intent to cause injury, not just to commit an action which ultimately causes an injury.  This is fatal to SAFS' case.  SAFS' sole allegations are that there was a breach of trust, which the debtor failed to remit proceeds through his business.  This is a simple breach of contract.  The act of not remitting proceeds was not done with a specific intent to injure SAFS.  These parties had been in business for over 10 years before the Auto House business failed.  Under the 11th Circuit case law, SAFS failed to present any allegations or present any evidence to the Bankruptcy Court, which would show that there was an intent to willfully and maliciously injure their property and as such, the Court correctly granted Summary Judgment.

The jury instructions here are also particularly instructive.   In the State Court case, the jury interrogatory and verdict form asked specifically on page five "Do you find that the conduct of Defendant Davis was outrageous, either because he acted with reckless indifference toward the Plaintiff's rights or engaged in conduct that constitutes an intentional and wanton violation of those rights?"   The jury answered "no".   The jury therefore found that the actions of Davis in this case did not rise to the level of mere recklessness.  As set forth above, the 11th Circuit has clearly stated that even if the actions were reckless, that is not sufficient, it must be more.  The Court therefore correctly applied the collateral estoppel standards in this case.

SAFS tries to argue that somehow the actions are not the same, in an effort to avoid the clear result of the application on the law.  SAFS performs all types of legal gymnastics, beginning on pages 18 through 20 of its Initial Brief.  In essence, SAFS argues that Auto House clearly caused willful or malicious injury to SAFS by converting its property and that willful and malicious injury could be imputed to Davis, by his alleged

participation in selling the vehicles out of trust.  SAFS then argues the Connecticut action it did not proceed against Auto House, only against Davis.  As such, the jury in the Connecticut action did not consider whether <u>Auto House</u> caused a willful and malicious injury, such that the Court cannot support the application of collateral estoppel to preclude SAFS'  §523 claim premised upon the <u>imputation</u> of Auto House's conduct to Davis under the controlling 11th Circuit authorities.

This Court does not have to deal with any imputation of Auto House's actions.  The jury was specifically asked about Davis's actions. Davis, who, as alleged by SAFS, was the sole owner and managing member of Auto House.  The jury was specifically asked if his actions were willful and wanton and/or done with reckless indifference.  The jury stated "no".  There was no need to try to impute the actions of the business, which SAFS alleges was controlled exclusively by Davis to Davis, and SAFS' argument must fail.

<u>**CONCLUSION**</u>

In light of the foregoing, based upon the above arguments presented and the undisputed facts, the Appellee hereby requests this Court enter an Order affirming the decision of the Bankruptcy Court.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true copy of the foregoing was served electronically where available or by regular mail to all those enumerated herein below this 12th day of January, 2022.

RAPPAPORT OSBORNE & RAPPAPORT, PLLC
Attorneys for Appellant
Suite 203, Squires Building
1300 North Federal Highway
Boca Raton, Florida 33432
Telephone:  (561) 368-2200

BY:____/s/_____
    LES S. OSBORNE, ESQ.
    Florida Bar No. 823139

SERVICE LIST:

Joshua W. Cohen - jwcohen@daypitney.com
Andrew Robert Ingalls - aingalls@daypitney.com