UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-81750-Civ-MIDDLEBROOKS/MCCABE

SAFS, INC.,

    Appellant,

vs.

GEORGE D. DAVIS,

    Appellee.

_____/

## REPORT AND RECCOMMENDATION

**THIS CAUSE** comes before the undersigned on an Order of Reference from United States District Court Judge Donald M. Middlebrooks (DE 18) for a Report and Recommendation on Plaintiff's Notice of Appeal (DE 1), which seeks appellate review of the Order Granting Defendant's Motion for Summary Judgment and corresponding Final Judgment, both entered on September 2, 2021, by United States Bankruptcy Judge Erik P. Kimball in the Adversary Proceeding titled *SAFS, Inc. vs. George D. Davis*, Adv. Proc. Case No. 9:20-AP-01384-EPK, in connection with the underlying Bankruptcy Court case styled *In re: George D. Davis*, Case No. 20-17930-EPK, pending before the Bankruptcy Court for the Southern District of Florida (West Palm Beach Division). After careful review of the record, the transcript, and the parties' briefs, the undersigned **RECOMMENDS** that the Bankruptcy Court's orders be **AFFIRMED.**

**I.    Background**

This case involves a used car dealership in Connecticut, a state court lawsuit in Connecticut, and a bankruptcy case in the Southern District of Florida.

### A.     The Used Car Dealership

From approximately 2006 to 2016, Auto House Southington, LLC ("Auto House"), a Connecticut limited liability company, owned and operated a used car dealership in Southington, Connecticut (DE 8-4 at 35, 106). George Davis (the "Debtor") owned Auto House and served as the managing member of the company (DE 8-4 at 107, 221). SAFS, Inc. ("SAFS"), a Connecticut corporation, provided automobile financing to help Auto House acquire its used car inventory (DE 8-4 at 107).

On or about September 13, 2006, SAFS, as lender, entered into an agreement with Auto House, as borrower, for the purposes of buying used car inventory (DE 8-3 at 74; DE 8-4 at 107). By Security Agreement dated September 13, 2006 (the "Security Agreement"), Auto House granted SAFS a security interest in, among other things, all used vehicles financed by SAFS (DE 8-3 at 76-77; DE 8-4 at 107). Under the Security Agreement, Auto House agreed to immediately pay to SAFS the proceeds from any sale of vehicles financed by SAFS (DE 8-3 at 76). Debtor also executed and delivered a personal Letter of Guarantee (the "Personal Guarantee") dated September 13, 2006, wherein he "unconditionally guarantee[d] to [SAFS] full and prompt payment at maturity, including any accelerated maturity, of any and all liabilities owed to [SAFS] by [Auto House]" (DE 8-3 at 79; DE 8-4 at 107).

During the course of the parties' relationship, Auto House sold numerous vehicles that had been financed by SAFS without notifying SAFS and without remitting the sales proceeds to SAFS as required by the Security Agreement and other documents (DE 8-4 at 108). In the automobile sales industry, this practice is commonly referred to as an "out-of-trust sale" (DE 8-4 at 108). In 2016, Auto House closed its doors and ceased doing business (DE 8-4 at 109).

B.   **The Connecticut Lawsuit**

On or about October 4, 2016, SAFS filed a lawsuit against Auto House and Debtor in Connecticut state court, seeking to enforce its rights under the Security Agreement, the Personal Guarantee, and other contracts (the "Connecticut Lawsuit") (DE 8-4 at 109). The initial complaint solely alleged counts for breach of contract (DE 8-4 at 37). In 2017, however, SAFS amended the Connecticut complaint to add counts against Debtor for fraud and punitive damages (DE 8-4 at 109; DE 9 at 34).

In December of 2018, the Connecticut Lawsuit proceeded to a jury trial (DE 8-4 at 7, 109). The jury returned a verdict in favor of SAFS and against Debtor on the breach-of-contract counts, awarding $918,080.80 in damages (DE 8-4 at 79-80). The jury returned a verdict in favor of Debtor and against SAFS on the fraud and punitive damage counts (DE 8-4 at 82-83). As to punitive damages, the jury answered "No" to the following specific jury interrogatory:

> Do you find the conduct of the [Debtor] was outrageous, either because he acted with reckless indifference toward [SAFS'] rights or engaged in conduct that constitutes an intentional and wanton violation of those rights?

(DE 8-4 at 83).

On April 4, 2019, the Connecticut court entered a final judgment in favor of SAFS and against Debtor in the amount of $1,324,327.49, representing the breach-of-contract damages awarded by the jury, as well as attorneys' fees awarded by the court (DE 8-4 at 7-8, 101, 109-10).

C.   **The Bankruptcy Case**

Thereafter, on July 21, 2020, Debtor filed a voluntary Chapter 7 bankruptcy petition in the Southern District of Florida (DE 8-3 at 1-57; DE 8-4 at 110). SAFS timely filed an adversary proceeding, challenging Debtor's right to discharge the judgment SAFS obtained in the Connecticut Lawsuit, *SAFS, Inc. v. Davis*, Case No. 20-AP-01384-EPK (DE 8-3 at 58-73; DE 8-4

at 1-15). SAFS brought multiple counts challenging the discharge, including count three, alleging the debt could not be discharged under 11 U.S.C. § 523(a)(6) because it arose from a "willful and malicious injury" (DE 8-3 at 68-39; DE 8-4 at 10-11), and count four, alleging the debt could not be discharged under 11 U.S.C. § 727(a)(3) because Debtor "has concealed, destroyed, mutilated, or failed to keep or preserve books and records" from which Debtor's financial condition or business transactions might be ascertained (DE 8-3 at 68-69; DE 8-4 at 11-12).

On February 12, 2021, Debtor filed a motion for summary judgment on all claims in the adversary proceeding (DE 8-4 at 35-48). The Bankruptcy Court conducted a hearing on the motion on September 1, 2021 (DE 9 at 1-40), after which the court orally pronounced its ruling from the bench, granting the motion on all claims (DE 9 at 24-39). As to count three for "willful and malicious" injury under Section 523(a)(6), the Bankruptcy Court found the doctrine of collateral estoppel barred the claim (DE 9 at 32-33). Specifically, the Bankruptcy Court reasoned that the Connecticut jury's "No" answer on the punitive damages count precluded re-litigation of "willful and malicious" conduct (DE 9 at 32).

As to count four, destruction of records under Section 727(a)(3), the Bankruptcy Court found the undisputed facts showed Debtor no longer possessed the Auto House business records, but the court found "no reason" to believe the missing records would "provide any insight into [Debtor's] personal financial condition or his personal business transactions" (DE 9 at 35). Also, the Bankruptcy Court found Debtor's failure to maintain the records was "reasonable," given that the business had closed four years prior to the bankruptcy petition and that SAFS had previously been given access to the records (DE 9 at 34-35).

On September 2, 2021, the Bankruptcy Court entered an Order Granting Defendant's Motion for Summary Judgment "for the reasons stated on the record" (DE 8-5 at 198-99). On the

same date, the Bankruptcy Court issued a corresponding Final Judgment (DE 8-5 at 198-99). This appeal followed (DE 8-5 at 201-06).

## II. Legal Standard

Federal district courts have jurisdiction over bankruptcy appeals. *See* 28 U.S.C. § 158(a)(1); *see also Rush v. JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) ("In reviewing bankruptcy court judgments, a district court functions as an appellate court."). When a Bankruptcy Court resolves a case by summary judgment, the district court applies a de novo standard of review. *See In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334-35 (11th Cir. 2001) ("While it is true that, in general, a district court reviews a bankruptcy court's factual finding for clear error … the standard of review for summary judgment, which by definition involves no findings of fact, is … de novo."). Accordingly, the Court applies a de novo standard of review here.

## III. Discussion

SAFS argues the Bankruptcy Court erred in two respects, by: (1) finding collateral estoppel barred the Section 523(a)(6) claim, and (2) granting summary judgment on the Section 727(a)(3) claim (DE 11 at 25). The Court will address each argument in turn.

### A. Section 523(a)(6) Claim

SAFS first argues the Bankruptcy Court erred by applying collateral estoppel to bar the Section 523(a)(6) claim. That section provides:

> (a) A discharge under section 727, 1141, 1192[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> …
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

Under well settled bankruptcy law, a showing of reckless disregard cannot satisfy the standard for a "willful and malicious" injury under this section. *See Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 485 B.R. 460, 468 (Bankr. S.D. Fla. 2013) ("[P]roof of willfulness requires a showing of intention or deliberate act, which is not done merely in reckless disregard of the rights of another.") (quotation marks and citation omitted) *aff'd, sub nom In re Kane*, 755 F.3d 1285 (11th Cir. 2014); *Westlake Flooring Co., LLC v. Staggs*, No. 5:17-cv-1722-KOB, 2018 WL 3752383, at *7 (N.D. Ala. Aug. 8, 2018) ("A debtor's negligence or recklessness in operating her business does not amount to infliction of a willful and malicious injury.").

Here, the Bankruptcy Court applied the doctrine of collateral estoppel to find that SAFS could not satisfy the standard for a "willful and malicious" injury because the Connecticut jury had already answered "No" to the following question:

> Do you find the conduct of the [Debtor] was outrageous, e*ither because he acted with reckless indifference toward [SAFS'] rights* or engaged in conduct that constitutes an intentional and wanton violation of those rights?

(DE 8-4 at 83) (emphasis added). Given that the Connecticut jury already found Debtor had *not* acted with reckless indifference, and that reckless indifference cannot satisfy the standard for a Section 523(a)(6) claim, the Bankruptcy Court concluded SAFS could never prevail on that claim. The Bankruptcy Court reasoned as follows:

> To obtain relief under Section 523(a)(6) [SAFS] must show that [Debtor's] actions were both willful and malicious. To prove willfulness [SAFS] must show either that the [Debtor] intended to harm [SAFS], or that [Debtor's] intentional act was substantially certain to harm [SAFS].
>
> …
>
> Importantly for this case, mere recklessness on the part of [Debtor] is not sufficient to satisfy the willfulness standard. To prove maliciousness [SAFS] must show that the [Debtor's] actions were wrongful and without just cause.

> In the Connecticut action [SAFS] sought punitive damages against [Debtor] and Auto House.  In that case [SAFS] made the same allegations of wrongdoing that it presents here.  After considering the evidence the jury found that [SAFS] failed to prove that [Debtor] acted even with reckless indifference toward the [SAFS] rights.
>
> The issue presented in the Connecticut case, meaning the wrongfulness of the [Debtor's] actions with regard to [SAFS] is identical to that under consideration here.  Under the rules of collateral estoppel the jury's findings on the wrongfulness of the [Debtor's] actions is binding in this case.  [Debtor] is entitled to summary judgment on Count [three].

(DE 9 at 24, 32-33).

The Bankruptcy Court also noted that SAFS added the fraud and punitive damages counts to its Connecticut Lawsuit as a likely litigation strategy to make the debt nondischargeable when and if Debtor later declared bankruptcy.  But having pursued that strategy and lost, the Bankruptcy Court reasoned, SAFS was bound with the result and not free to "try again" in another court:

> When [SAFS] filed its initial complaint in Connecticut it sought judgment against the [Debtor] based solely on his guarantee.
>
> …
>
> Of course, if one has a State Court judgment based in fraud… this may greatly facilitate a dischargeability action in a later bankruptcy by the [Debtor].  It appears this was [SAFS'] thinking in the State Court action.
>
> …
>
> The problem is that [SAFS] was not successful on the fraud and punitive damages claims in the Connecticut action.  In spite of that, [SAFS] wants to try again here, but [SAFS'] strategy has backfired.  Once you lose on such claims you don't get to try again in Bankruptcy Court.

(DE 9 at 33-34).

The undersigned finds no error in the Bankruptcy Court's reasoning.  "It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court."  *In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996).  The Bankruptcy Court properly chose to apply the Connecticut law of collateral estoppel.  *See, e.g.*, *In re St. Laurent*, 991 F.2d 672, 676

(11th Cir. 1993) ("If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."). Under Connecticut law, collateral estoppel, or issue preclusion, "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." *Girolametti v. Michael Horton Assocs., Inc.*, 164 A.3d 731, 744 (Conn. App. Ct. 2017). Connecticut law also requires that the issue decided in the first action be identical to the issue to be decided in the second action. *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009) (quotation marks and citations omitted).

SAFS raises three arguments regarding collateral estoppel, each of which the Court finds unpersuasive.

### 1. "Outrageous" v. "Willful and Malicious"

First, SAFS argues the issue before the Connecticut jury was not "identical" to the issue posed by the Section 523(a)(6) claim. Specifically, the Connecticut jury was called upon to decide whether Debtor had committed "outrageous" conduct, whereas Section 523(a)(6) required a finding of "willful and malicious" conduct.

The Court disagrees. As the Bankruptcy Court recognized, Section 523(a)(6) requires proof that the conduct was both willful *and* malicious. Failure to prove either prong defeats a claim. As to the "willful" prong, the law is well settled that mere recklessness will not suffice. *See, e.g.*, *Kane*, 485 B.R. at 468. Accordingly, if SAFS could not prove Debtor acted in reckless disregard, this meant SAFS could never prove the "willful" prong, which meant SAFS could never prevail on its Section 523(a)(6) claim.

Here, the Connecticut jury had already determined that Debtor did not act in reckless disregard. Although the verdict interrogatory used the term "outrageous," the interrogatory itself

8

defined that term, offering only two definitions: either that Debtor acted "with reckless indifference toward [SAFS'] rights," or that Debtor "engaged in conduct that constitutes an intentional and wonton violation of those rights" (DE 8-4 at 83). Of the two definitions, reckless indifference required the *lower burden.* Accordingly, no conclusion can be drawn from the jury's "No" answer, except that the jury concluded Debtor did *not* act in reckless disregard of SAFS' rights. Given this verdict, the Court finds no error in the Bankruptcy Court's decision to apply collateral estoppel to bar the Section 523(a)(6) claim.

### 2. "Imputation" Argument

SAFS next argues the two issues were not identical because the Connecticut jury answered its question only as to Debtor in his individual capacity, whereas SAFS' adversary proceeding sought to impute to Debtor the out-of-trust sales made by Auto House (DE 11 at 20). Because the jury returned its "No" verdict only as to Debtor and not as to Auto House, SAFS argues, the Bankruptcy Court should not have given preclusive effect to the "No" verdict.

The Court rejects this argument for two reasons. First, SAFS did not raise this argument before the Bankruptcy Court. "Legal theories not raised squarely in the lower courts, cannot be broached for the first time on appeal." *In re Physicians Reliance Ass'n Inc.*, 415 Fed App'x 140 (11th Cir. 2011) (debtor-appellant waived claim of insufficient service of process when debtor-appellant failed to specifically raise the claim in district court).

Second, the Court finds the argument unpersuasive on the merits. The Connecticut Lawsuit and the adversary proceeding involved common parties and common issues. In the Connecticut Lawsuit, SAFS sought to prove Debtor committed "outrageous" conduct in connection with the out-of-trust sales. In the bankruptcy adversary proceeding, SAFS likewise sought to prove Debtor committed "willful and malicious" conduct in connection with the out-of-trust sales. Both cases

9

involved the same parties and the same set of underlying factual allegations. The Court finds no error on this ground.

### 3. Other Out-of-Trust Sale Cases

SAFS next argues the Bankruptcy Court erred by failing to apply past cases that addressed out-of-trust sales. *See Ford Motor Credit Co. v. Owens*, 807 F.2d 1556 (11th Cir. 1987); *In re Monson*, 661 F. App'x 675 (11th Cir. 2016). SAFS argues that these cases stand for the proposition that "a sale out of trust is per se willful and malicious" (DE 11 at 16).

The Court disagrees. In each of these cases, courts concluded, based on different records with different sets of facts, that Debtors committed "willful and malicious" acts for purposes of Section 523(a)(6). These cases do not announce a per se rule that every out-of-trust sale equates to a Section 523(a)(6) violation. Most importantly, none of the cases cited by SAFS involved a prior state court action between the same parties where a jury already concluded the debtor's conduct failed to meet the standard of "reckless indifference," let alone "willful and malicious." The Court finds no error.

### B. Section 727(a)(3) Claim

SAFS next argues the Bankruptcy Court erred by granting summary judgment on count four of the adversary proceeding, which alleged the debt was nondischargeable under Section 727(a)(3). That section provides:

(a) The court shall grant the debtor a discharge, unless –

…

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

The purpose of Section 727(a)(3) is to ensure that creditors have sufficient information to understand the debtor's financial condition. *See In re Moore*, 559 B.R. 243, 254 (Bankr. M.D. Fla. 2016). This section does not mandate a full accounting of every transaction; it only requires orderly records from which the debtor's present and past financial condition can be ascertained with substantial completeness and accuracy. *Id.*

In applying Section 727(a)(3), the case law describes a two-part burden-shifting test. At step one, the creditor bears the burden to establish a prima facie case by showing "(1) the debtor failed to maintain and preserve adequate records, and (2) such a failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Maier*, 498 B.R. 340, 347 (Bankr. M.D. Fla. 2013) (quoting *Meridian Bank v. Allen*, 958 F.2d 1226, 1232 (3d Cir. 1992). Once a creditor makes out a prima facie case, the burden shifts to the debtor, at step two, to show that his or her destruction or non-possession of records was "justified under all of the circumstances of the case." *Meridian Bank*, 958 F.2d at 1234.

In this case, count four of the adversary proceeding alleged that Debtor violated Section 727(a)(3) because he no longer possessed Auto House business records at the time he filed his bankruptcy petition. The Bankruptcy Court entered summary judgement against SAFS, finding as follows:

> Count [four] seeks denial of discharge under Section 727(a)(3). [SAFS] argues that [Debtor's] discharge should be denied because when he filed this bankruptcy case he no longer had any business records of [Auto House].
>
> [Auto House] ceased business more than four years prior to the filing of this case. This was followed by substantial litigation by [SAFS] against both [Auto House] and [Debtor], during which time [SAFS] had access to [Auto House's] primary business records. [SAFS] obtained a judgment against [Auto House] and [Debtor] based apparently on those very business records. Indeed, when you read the Connecticut Court's orders that have been filed in this matter, it is clear that the

> trial included presentation of relevant business records. Thereafter the records were destroyed.
>
> Given this history, for purposes of this bankruptcy case, there is no reason to believe that [Auto House's] business records would provide any insight into [Debtor's] personal financial condition or his personal business transactions. Given this history it is reasonable that [Debtor] does not now have possession of [Auto House's] business records.

(DE 9 at 34-35).

SAFS assigns error on three grounds, each of which the Court will address below.

### 1. Contradiction with the Record

First, SAFS argues the Bankruptcy Court based its ruling on a key factual finding that was contradicted by the record (DE 11 at 21). Namely, SAFS argues that "the Bankruptcy Court granted summary judgment based on the erroneous finding that SAFS had access to Auto House's business records during the pendency of the Connecticut Action" (DE 11 at 25). In truth, SAFS argues, Debtor produced no Auto House records to SAFS during the Connecticut Lawsuit (DE 11 at 25).

The Court finds no error on this ground because the Bankruptcy Court did not find that Debtor "produced" Auto House records during the pendency of the Connecticut Lawsuit. Rather, the Bankruptcy Court merely found that SAFS "had access" to such records during the Connecticut Lawsuit. This fact was undisputed, as the record showed SAFS accessed the Auto House records before the Connecticut Lawsuit started, evidenced by the following:

- Beginning in June 2016, SAFS conducted multiple audits of Auto House after discovering that Auto House was selling vehicles out-of-trust (DE 8-4 at 187).

- Later, the IRS audited Auto House business records for the tax year 2016 (DE 8-4 at 223). This audit took place at the offices of Debtor's accountant (DE 8-4 at 224). During this time, SAFS' attorneys had access to the Auto House records, and the "attorneys … went there and went through them" (DE 8-4 at 224).

- During the Connecticut Lawsuit, SAFS also obtained Auto House bill-of-sale records produced by a third party (DE 8-4 at 188).

- As noted by the Bankruptcy Court, the Connecticut court's order specifically referenced Auto House's business records, thereby showing that SAFS used such records during the suit. *See* Ruling on Plaintiff's Motion to Reform Verdict, to Set Aside Verdict, For Judgment Notwithstanding the Verdict and For Additur, Jan. 31, 2019 (DE 8-4 at 92).

In short, the record fully supported, and there was no genuine issue of material fact in dispute, that SAFS "had access" to Auto House records during the pendency of the Connecticut Lawsuit.[1] As to the extent of records to which SAFS had access, Section 727(a)(3) does not require a full accounting of every transaction, but merely enough records from which the debtor's present and past financial condition can be ascertained with substantial completeness and accuracy. *See In re Moore*, 559 B.R. at 254. The Court finds no error.

### 2. Burden-Shifting Test

Next, SAFS argues the Bankruptcy Court erred because genuine issues of material fact remained at both steps of the burden-shifting test. In particular, SAFS contends that genuine issues of material fact remained as to (1) whether the missing Auto House records impacted the ability to "ascertain" Debtor's financial situation, and (2) if so, whether Debtor's failure to maintain the missing records was "justified under all of the circumstances of the case." The Bankruptcy Court ruled against SAFS on both prongs, finding (1) "no reason" to believe the missing records would provide any insight into Debtor's personal financial condition or personal business transactions,

---

[1] In the summary judgment briefing before the Bankruptcy Court, Debtor submitted a Supplemental Affidavit of George Davis (DE 8-5 at 179-80). On this appeal, SAFS argues this Court should not consider the Supplemental Affidavit because it was not timely submitted to the Bankruptcy Court (DE 17 at 5). Without resolving that issue, the Court notes it has not considered the Supplemental Affidavit in deciding the issues on this appeal.

and (2) finding it "reasonable" that Debtor no longer had possession of the missing records (DE 9 at 34-35).[2]

The Court finds no error, as the undisputed facts showed that, inter alia, (1) Auto House had closed its doors more than four years prior to Debtor's filing of the bankruptcy petition (DE 8-4 at 109-10; DE 9 at 35), (2) SAFS had been given access to the Auto House records on multiple occasions prior to their destruction (DE 8-4 at 187-88, 224; DE 9 at 35), and (3) SAFS used the Auto House records during the Connecticut Lawsuit (DE 8-4 at 92-93; DE 9 at 35). For these reasons, the Court finds no error in the Bankruptcy Court's application of the undisputed facts to the standards set forth in Section 727(a)(3).

### 3. *Lorenzo*

Finally, SAFS argues the Bankruptcy Court erred by failing to follow *In re Lorenzo*, 606 F. App'x 548 (11th Cir. 2015). In that case, a debtor defaulted by failing to respond to an adversary proceeding that alleged a violation of Section 727(a)(3). *Id.* The debtor moved to set aside the default, requiring the Bankruptcy Court to analyze, inter alia, "whether the defaulting party presented a meritorious defense to the suit." *Id.* (citations omitted). In the context of deciding that motion, the Bankruptcy Court found the debtor lacked a meritorious defense, where the debtor had mixed her personal and business finances and, in a fit of anger, smashed her business-related computer server with a hammer. *Id.* at 552. On these facts, both the District Court and the Eleventh Circuit found no abuse of discretion in the Bankruptcy Court's refusal to set aside the default. *Id.* at 552.

The *Lorenzo* decision differs both factually and procedurally from this case. Unlike *Lorenzo*, this case did not involve a default judgment or a debtor who destroyed records in a fit of

---

[2] SAFS does not argue, and the Court does not find, any error in the Bankruptcy Court's use of the word "reasonable" rather than the word "justified," which appears in Section 727(a)(3).

14

anger. Rather, the records here were discarded following closure of the Auto House business four years prior to the bankruptcy petition. Moreover, unlike *Lorenzo*, the creditor here had previously been given access to the missing records, or portions of them, and there was no showing that Debtor had mixed his business and personal finances. The Court finds no error.

**IV.     Conclusion**

For all these reasons, the undersigned recommends that the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment and corresponding Final Judgment, both entered on September 2, 2021, in the Adversary Proceeding titled *SAFS, Inc. vs. George D. Davis*, Adv. Proc. Case No. 9:20-AP-01384-EPK, be **AFFIRMED**.

**V**.     **Notice of Right to Object**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 4th day of August 2022.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE